116 F.3d 1483
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roosevelt WILLIAMS, Plaintiff-Appellant,
v.
Michael T. SCOTT, et al., Defendants-Appellees.
 No. 96-2184.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 5, 1997.*
Decided June 5, 1997.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 94 C 64; Allen Sharp, Judge.
 Before CUMMINGS, BAUER, and WOOD, Circuit Judges.
 
 ORDER
 
 1
 Roosevelt Williams, a prisoner incarcerated in the Maximum Control Complex ("MCC") in Westville, Indiana, brought this claim under 42 U.S.C. § 1983 against numerous prison guards and administrators, alleging seven separate constitutional violations. Based on the recommendations of the magistrate judge to whom the case was referred, the district court granted summary judgment as to some of Williams's claims, and, after an evidentiary hearing before the magistrate judge, entered judgment in favor of the defendants as to the remaining claims. Williams then brought this appeal with respect to four of those claims,[1] and we affirm.
 
 Use of Mace Against Williams
 
 2
 Williams claims that Sgt. Steve Supp, a guard at the MCC, violated the Eighth Amendment's prohibition against the use of excessive force against prisoners. Williams claimed that Supp used mace against him on one occasion while Williams was locked in his cell. The district court granted summary judgment on this claim based on the magistrate judge's recommendation.
 
 
 3
 The magistrate judge concluded that the uncontradicted evidence showed that Williams was kicking his cell door, and that Supp sprayed Williams with a two-second burst of mace only after the latter ignored Supp's orders to stop. The evidence further showed that Williams was then taken to see the prison nurse to flush the chemical out of his eyes. In his objection to the magistrate judge's recommendation, Williams did not deny that he disobeyed Supp's order to stop kicking his cell door. Rather, he argued only that the use of mace was inappropriate under these circumstances, because his kicking the cell door posed no threat of bodily harm, riot or escape.
 
 
 4
 To state a claim under the Eighth Amendment for an excessive use of physical force, a prisoner must show that the defendant used force "maliciously or sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian 503 U.S. 1, 6-7 (1992). We held in Sotov.Dicky, 744 F.2d 1260, 1270 (7th Cir.1984), cert. denied, 470 U.S. 1085 (1985), that "[t]he use of mace ... when reasonably necessary to ... subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." In Soto, we found no constitutional violation where prison guards used mace on a prisoner in response to "[the] failure of the inmate to obey a direct order." Id. at 1271.
 
 
 5
 Here, Williams admitted that Supp used mace only to restore discipline after he (Williams) disobeyed Supp's direct order. Williams made no claim or showing that Supp used mace either to inflict harm or in dangerous quantities. Williams pointed to no evidence--either in his objection to the magistrate judge's report and recommendation or in his appellate brief--which created a genuine question of material fact. Thus, the district court properly granted summary judgement on this claim in favor of Supp. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 Interference with Legal Correspondence
 
 6
 Williams also alleged that various guards, counselors and officials at the MCC improperly interfered with his legal correspondence with his attorney and various courts, in violation of the Fourteenth Amendment. See Bounds v. Smith, 430 U.S. 817, 821-22, 824-25 (1977); Gaines v. Lane, 790 F.2d 1299, 1308 (7th Cir.1986). Williams claimed that the defendants failed to provide him with postage or envelopes for legal correspondence, and that they returned legal mail to him rather than placing it in the out-going mail. The defendants submitted affidavits denying that they had interfered with Williams's access to his attorney or the courts, and Williams offered no contrary affidavits or evidence. Thus, the magistrate judge recommended that the district court grant summary judgment in favor of the defendants on this claim. In his objection to the magistrate judge's recommendation, Williams reiterated his claim that the defendants interfered with his legal correspondence, but pointed to no evidence in the record to contradict the magistrate judge's conclusion. Accordingly, the district court adopted the magistrate judge's recommendation and granted summary judgment in favor of the defendants on this claim.
 
 
 7
 On appeal, Williams again fails to direct our attention to any evidence in the record which even arguably supports his claim.[2] Once again, in the absence of any genuine issue of material fact, the district court property granted summary judgment in favor of the defendants on this claim. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 322.
 
 Removal of Bedding
 
 8
 Williams next claimed that guards at MCC denied him bedding in violation of the Eighth Amendment.[3] Because neither side addressed this issue in its respective motion for summary judgment, the district court referred the claim to the magistrate judge for a hearing. The magistrate judge found as a matter of fact that on various occasions, the guards removed Williams's bedding during the day after Williams refused to make his bed in the manner prescribed by MCC regulations. The magistrate judge further found that "there is no evidence that the removal of his bedding caused Mr. Williams any harm. The bedding was returned at night; thus, he was not deprived of the bedding during normal sleeping hours." The magistrate judge therefore recommended that the district court enter judgment in favor of the defendants on this claim.[4] Although Williams objected in the district court to the magistrate judge's findings and recommendation, he pointed to no evidence in the record to support his position. Accordingly, the district court adopted the magistrate judge's recommendation.
 
 
 9
 We review a magistrate judge's finding of fact, as adopted by the district court, for clear error. Cumbie v. Singletary, 991 F.2d 715, 719 (11th Cir.), cert. denied, 510 U.S. 1031 (1993). Williams makes no argument in his appellate brief, nor does he direct our attention to any evidence in the record, which would support a finding of clear error. Thus, we accept the magistrate judge's findings of fact.
 
 
 10
 To state an Eighth Amendment violation, a plaintiff must show that the defendant acted with a sufficiently culpable state of mind and that the alleged deprivation was sufficiently serious "in light of contemporary standards of decency." Hudson, 503 U.S. at 8. Removing a prisoner's bedding during the day for the prisoner's refusal to make his bed, and returning it only at night, does not violate any contemporary standard of decency. Accordingly, the district court properly entered judgement in favor of the defendants on this claim.
 
 Forcible Showers
 
 11
 Williams's principal claim both in his complaint and on appeal alleges that various defendants violated the Eighth Amendment by forcibly showering him. The MCC requires prisoners to bathe at least once a week. According to Williams's complaint, he refused to shower from March 1992 to July 1992. At various times during this period (the parties disagree on how many times, though the magistrate judge found that it occurred only three times), guards approached Williams in his cell and directed him to shower. When Williams refused to do so, he was placed in handcuffs and leg-shackles, and taken to the shower area. He was then restrained and sprayed with a hose. The guards next applied liquid soap and scrubbed Williams with brushes. Finally, Williams was again hosed off, and then given a clean set of clothing and returned to his cell.
 
 
 12
 As with Williams's claim regarding his bedding, the district court referred this claim to the magistrate judge for a hearing.[5] Williams alleges that the water pressure in the hose, the stiffness of the brush bristles, and force with which he was scrubbed all caused him injury. The magistrate judge found, however, that the water hose had a maximum pressure "similar to a standard home shower head." The magistrate judge further found (after hearing testimony and viewing videotapes of the showers) that "[t]he officers were careful to use only a light spray so as not to risk injury. The brush which was used to scrub Mr. Williams was soft-bristled, and he was not scrubbed over-zealously. Liquid soap was used with care; it appeared that the officers were careful not to spray any soap into Mr. Williams'[s] eyes."
 
 
 13
 With respect to Williams's claim that he was injured during the showers, the magistrate judge found that:
 
 
 14
 [T]he amount of force used was minimal. There is no evidence that the showers were used as a form of discipline. There was no reason for the officers involved to believe that Mr. Williams was injured by or during the forced showers. Indeed, [Williams] admitted that he never told anyone involved in giving him the forced showers that he was being hurt or injured[,][n]or did he request medical treatment after any of the showers.
 
 
 15
 Although Williams apparently objects to the magistrate judge's findings of fact, he points to no evidence in the record upon which this court could find that those findings were clearly erroneous. At most, he reiterates his claim that the water pressure from the hose and the force with which he was brushed were excessive. Moreover, Williams appears to argue that the district court improperly granted summary judgment on this claim. As we stated above, however, the district court did not grant summary judgment on this claim; it entered judgment after an evidentiary hearing conducted by the magistrate judge--a hearing that Williams attended. Absent some showing of clear error, we therefore must accept the magistrate judge's factual findings.
 
 
 16
 Based on the facts as found by the magistrate judge, the district court correctly ruled that the defendants did not violate Williams's Eighth Amendment rights. There is no evidence in the record to indicate that the guards showered Williams "maliciously or sadistically to cause harm," or that anything about the showers violated "contemporary standards of decency." Hudson, 503 U.S. at 6-7, 8. Rather, the record incontrovertibly supports the district court's conclusion that the guards used the minimal force necessary to shower Williams, thereby maintaining discipline and hygienic conditions within the prison. Such a use of force does not violate the Eighth Amendment. Id.
 
 
 17
 Effect of the Prison Litigation Reform Act We have determined that this appeal is frivolous. Under the Prison Litigation Reform Act, Pub.L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996), this result counts as a "strike." We caution Mr. Williams that if, while incarcerated, he loses three or more actions or appeals on the ground that they are frivolous, malicious, or fail to state a claim upon which relief may be granted, his ability to pursue civil claims in forma pauperis in the federal courts will be greatly curtailed, See 28 U.S.C. § 1915(g); Abdul-Wadood v. Nathan, 91 F.3d 1023 (1996).
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 In addition to the four claims we discuss below, Williams's appellate brief raises a vague claim that the defendants committed these alleged constitutional violations in retaliation against him because he "[spoke] out about [his] conditions of confinement," presumably in reference to previous lawsuits Williams has filed. Generously construed, this allegation asserts a claim under the First Amendment. However, Williams did not raise this claim in his complaint or at any other point before the district court, and thus, it is not cognizable on appeal. Prymer v. Ogden, 29 F.3d 1208, 1215 (7th Cir.), cert. denied, 513 U.S. 1057 (1994)
 
 
 [2]
 Our own review of the record (which we are not obligated to undertake) further undermines Williams's claim. For example, Williams attached as an exhibit to his complaint a memorandum to him from one of the defendants. The memorandum stated:
 Be advised that I am not refusing to send (what you consider legal documents) to the courts. I merely asked you to clarify why you would be sending materials to [c]ourts in California. The envelopes were not addressed to a specific court, person or office. If these questions are too difficult for you to answer, then don't expect your mail to be paid for and envelopes to continually be supplied for you [by the prison].
 Similarly, another memorandum from one of the defendants to Williams attached as an exhibit to his complaint stated:
 In response to your note today, the three envelopes Counselor Wilson [one of the defendants in this case] brought to me for guidance were addressed simply to three different courthouses in California. They are not addressed to any specific individual, office or [c]ourt. [Indiana Department of Correction] policy in this regard is very specific: IT IS NOT LEGAL CORRESPONDENCE UNLESS IT IS TO A COURT, JUDGE OR ATTORNEY.
 (emphasis in original)
 Finally, Williams attached as exhibits to a motion entitled "Writ of Judicial Notice" five stamped envelopes he claimed the defendants improperly returned to him rather than placing in the mail. These envelopes and stamps all were provided by the prison for legal correspondence. However, two of the envelopes were addressed to members of the Congress of the United States. The remaining three envelopes were addressed to one "Judge Yoder" of the Indiana courts. These letters were returned to Williams because there was no "Judge Yoder" listed in a directory of Indiana judges. As the defendants later discovered, there is apparently a "Judge Joder" in the Indiana courts. Williams makes no claim that any of the defendants refused to send out any of his letters to the judge once the defendants discovered Williams's error and realized to whom Williams actually intended to send the letters.
 Thus, Williams's own evidence undermines his claim that any of the defendants improperly interfered with his Fourteenth Amendment right to correspond with his lawyers or the courts. The evidence in the record clearly indicates that, to the extent Williams had difficulty sending out mail, it was due solely to his own failure properly to address his mail to valid recipients of legal correspondence.
 
 
 [3]
 Arguably, Williams also was claiming that the removal of his bedding violated Indiana law or Indiana Department of Correction procedures. But § 1983 does not provide a remedy for violations of state law. See 42 U.S.C. § 1983; White v. Olig, 56 F.3d 817, 821 (7th Cir.1995)
 
 
 [4]
 The magistrate judge understood Williams's complaint to be seeking only declaratory and injunctive relief. Because Williams made no allegation that the removal of his bedding was ongoing or systematic, the magistrate judge found that Williams failed to allege any case or controversy appropriate for injunctive relief
 In fact, Williams's complaint did state that he was seeking $5,000 in compensatory damages and $10,000 in punitive damages from each defendant. (The complaint was hand-written and over thirty pages long, and thus, the magistrate judge's error is understandable.) Nonetheless, the magistrate judge made findings of fact on Williams's bedding claim, and held alternatively that Williams failed to prove any Eighth Amendment violation.
 
 
 [5]
 The magistrate judge also believed that Williams sought only declaratory and injunctive relief with respect to this claim. See supra at note 4. Nonetheless, the magistrate judge made appropriate findings of facts, and recommended in the alternative that the district court enter judgment for the defendants on the merits of this claim